RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0048p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

RAYMOND M. PFEIL and MICHAEL KAMMER,
Individually and on behalf of all others
similarly situated,

        *Plaintiffs-Appellants,*

    *v.*

STATE STREET BANK AND TRUST COMPANY,
        *Defendant-Appellee.*

No. 10-2302

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 09-12229—Denise Page Hood, District Judge.

Argued: October 7, 2011

Decided and Filed: February 22, 2012

Before: MARTIN and GRIFFIN, Circuit Judges; ANDERSON, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Geoffrey M. Johnson, SCOTT & SCOTT, LLP, Cleveland Heights, Ohio, for Appellants. Wilber H. Boies, McDERMOTT WILL & EMERY LLP, Chicago, Illinois, for Appellee. **ON BRIEF:** Geoffrey M. Johnson, SCOTT & SCOTT, LLP, Cleveland Heights, Ohio, for Appellants. Wilber H. Boies, Nancy G. Ross, McDERMOTT WILL & EMERY LLP, Chicago, Illinois, Chris C. Scheithauer, McDERMOTT WILL & EMERY LLP, Irvine, California, James D. VandeWyngearde, PEPPER HAMILTON LLP, Southfield, Michigan, for Appellee. Elizabeth S. Goldberg, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., Kent A. Mason, DAVIS & HARMAN LLP, Washington, D.C., for Amici Curiae.

_____

[*] The Honorable S. Thomas Anderson, United States District Judge for the Western District of Tennessee, sitting by designation.

--------

**OPINION**

--------

S. THOMAS ANDERSON, District Judge.   Raymond M. Pfeil and Michael Kammer, individually and on behalf of others similarly situated, allege that State Street Bank and Trust breached its fiduciary duty under the Employee Retirement Income Security Act ("ERISA").   State Street was the fiduciary for the two primary retirement plans offered by General Motors, and the plaintiffs were plan participants.   The plaintiffs allege that State Street breached its fiduciary duty by continuing to allow participants to invest in GM common stock, even though reliable public information indicated that GM was headed for bankruptcy.  The district court dismissed the complaint, holding that State Street's alleged breach of duty could not have plausibly caused losses to the plan.   For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings.

## I.  BACKGROUND

### A.  Factual Background

General Motors offered separate defined contribution 401(k) profit-sharing plans to its salaried and hourly employees.   The plans maintained individual accounts for each participant.   A participant's benefits were based on the amount of contributions and the investment performance of the contributions.   According to the complaint, the plans offered participants several investment options, including mutual funds, non-mutual fund investments, and the subject of this litigation: the General Motors Common Stock Fund.  Participants had control over how their funds were invested. The plans imposed no restrictions on the participant's allocation of assets among the investment options and gave participants the discretion to change their allocation in any investment on any business day.   The plans invested each participant's funds by default in the Pyramis Strategic Balanced Fund, and not the General Motors Common Stock Fund.

The plan documents explain that the purpose of the General Motors Common Stock Fund was "to enable Participants to acquire an ownership interest in General Motors and is intended to be a basic design feature" of the plans. The complaint alleges that the plans invested between $1.45 billion and $1.9 billion in plan assets in General Motors stock during the class period. The plan documents provide that this fund "shall be invested exclusively in [General Motors] $1-2/3 par value common stock without regard to" diversification of assets, the risk profile of the investment, the amount of income provided by the stock, or fluctuations in the market value of the stock. However, the plans state that these restrictions do not apply if State Street, acting as the independent fiduciary:

> in its discretion, using an abuse of discretion standard, determines from reliable public information that (A) there is a serious question concerning [General Motors'] short-term viability as a going concern without resort to bankruptcy proceedings; or (B) there is no possibility in the short-term of recouping any substantial proceeds from the sale of stock in bankruptcy proceedings.

In the event either of these conditions were met, the plan documents directed State Street to divest the plans' holdings in the General Motors Common Stock Fund.

State Street became fiduciary for the plans on June 30, 2006, at a time, as the plaintiffs allege, when General Motors was already in serious financial trouble. The complaint alleges that General Motors' troubles were well-documented and that commentators increasingly opined that bankruptcy protection was "virtually a certainty" for the company. On July 15, 2008, GM Chief Executive Officer Rick Wagner announced that the company needed to implement a restructuring plan to combat second quarter 2008 losses, which he described as "significant." As part of the plan, General Motors eliminated its dividend, reduced its salaried workforce by twenty percent, and curtailed truck and large vehicle production, all signs of what plaintiff contend was a "potential disaster for shareholders." The complaint alleges that on August 1, 2008, General Motors announced a third quarter net loss of $15.5 billion. These bleak reports forced the company to acknowledge in its November 7, 2008 third-quarter financials that it would exhaust cash reserves by mid-2009. Three days later, General Motors filed its

Form 10-Q for third quarter 2008, disclosing that its auditors had "substantial doubt" regarding the company's "ability to continue as a going concern." The plaintiffs allege that under these circumstances, State Street should have recognized as early as July 15, 2008, that General Motors was bound for bankruptcy and that GM stock was no longer a prudent investment for the plans.

On November 21, 2008, State Street informed participants that it was suspending further purchases of General Motors Common Stock Fund citing "GM's recent earnings announcement and related information about GM's business." The plaintiffs allege, however, that State Street took no further action to divest the over fifty million shares of General Motors stock held by plan participants at that time. On March 31, 2009, State Street finally decided to sell off the plans' holdings in company stock and completed the sell-off on April 24, 2009. General Motors filed its bankruptcy petition on June 1, 2009.

## B. Procedural History

The plaintiffs filed their putative class action on June 9, 2009, alleging State Street's breach of fiduciary duty in violation of ERISA § 409(a), 29 U.S.C. § 1109(a). Specifically, the complaint alleged that State Street had failed to prudently manage the plan's assets thereby breaching its fiduciary duty defined in ERISA § 404. The named plaintiffs brought this action on behalf of themselves and a class of individuals defined as: "All persons who were participants in or beneficiaries of the [General Motors 401(k) Plans] at any time between July 15, 2008 and April 24, 2009 (the 'Class Period') and whose accounts included investments in General Motors Stock."

State Street filed a motion to dismiss the complaint for failure to state a claim, which the district court granted on September 30, 2010. The district court held that the plaintiffs had sufficiently pleaded a breach of State Street's fiduciary duty by alleging that State Street continued to operate the General Motors Common Stock Fund after public information raised serious questions about General Motors' short-term viability as a going concern without resort to bankruptcy. However, the district court concluded that the plaintiffs had not plausibly alleged that State Street's breach proximately caused losses to the plans. The district court emphasized that plan participants had a menu of

investment options from which to choose and that participants retained control over the allocation of assets in their accounts at all times. Because the participants could have elected to move their funds from the General Motors Common Stock Fund to one of the other investments offered in the plan, the court reasoned, State Street could not be liable for losses to the plan. Therefore, the district court granted State Street's motion to dismiss. The plaintiffs' timely appeal followed.

## II. ANALYSIS

### A. Standard of Review

We review de novo a dismissal for failure to state a claim under Rule 12(b)(6). *Ohio ex. rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011). A complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face" in order to survive a motion to dismiss. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotations and citations omitted); *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011). A claim is facially plausible if the "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007)).

### B. Duty of a Fiduciary under ERISA

"ERISA is a comprehensive statute designed to promote the interests of employees and their beneficiaries in employee benefit plans." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983). ERISA § 404(a), 29 U.S.C. § 1104(a)(1), establishes the fiduciary duties of trustees administering plans governed by ERISA:

> [A] fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and –
>
> (A) for the exclusive purpose of:
>
> > (i) providing benefits to participants and their beneficiaries; and
> >
> > (ii) defraying reasonable expenses of administering the plan;

(B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

(C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so; and

(D) in accordance with the documents and instruments governing the plan.

"We have explained that the fiduciary duties enumerated in [the statute] have three components." *Gregg v. Transp. Workers of Am. Int'l*, 343 F.3d 833, 840 (6th Cir. 2003). First, a fiduciary owes a duty of loyalty "pursuant to which all decisions regarding an ERISA plan must be made with an eye single to the interests of the participants and beneficiaries." *Id.* (quoting *Kuper v. Iovenko*, 66 F.3d 1447, 1458 (6th Cir. 1995) (internal quotations marks omitted)). Second, ERISA imposes "an unwavering duty to act both as a prudent person would act in a similar situation and with single-minded devotion to [the] plan participants and beneficiaries." *Id.* (internal quotation marks and citation omitted). Third, ERISA fiduciaries must act for the exclusive purpose of providing benefits to plan participants and beneficiaries. *Id.* "[T]he duties charged to an ERISA fiduciary are the highest known to the law." *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 426 (6th Cir. 2002) (citation and internal quotation marks omitted). ERISA holds a fiduciary who breaches any of these duties personally liable for any losses to the plan that result from its breach of duty. *Kuper*, 66 F.3d at 1458 (citing 29 U.S.C. § 1109(a)).

It is undisputed in this case that the plans at issue are a specific kind of ERISA plan known as Employee Stock Ownership Plans ("ESOPs"). ERISA authorizes certain kinds of eligible individual account plans ("EIAP") including ESOPs. 29 U.S.C. § 1107(d). An ESOP is an ERISA plan investing primarily in "qualifying employer securities," which is most commonly the stock of the employer creating the plan. 29 U.S.C. § 1107(d)(6)(A). An ESOP promotes a policy of employee ownership of a company by modifying the fiduciary duty to diversify plan investments, 29 U.S.C.

§ 1104 (a)(1)(C), and the prudence requirement to the extent that it requires diversification, 29 U.S.C. §§ 1104 (a)(1)(B); 1104 (a)(2). "[A]s a general rule, ESOP fiduciaries cannot be held liable for failing to diversify investments, regardless of whether diversification would be prudent under the terms of an ordinary non-ESOP pension plan." *Kuper*, 66 F.3d at 1458.

However, an ESOP fiduciary may be liable for failing to diversify plan assets even where the plan required that an ESOP invest primarily in company stock. *Id*. at 1459. We have explained that ERISA's statutory exemptions for ESOPs

> do[ ] not relieve a fiduciary . . . from the general fiduciary responsibility provisions of [§ 1104] which, among other things, require a fiduciary to discharge his duties respecting the plan solely in the interests of plan participants and beneficiaries and in a prudent fashion . . . nor does it affect the requirement . . . that a plan must be operated for the exclusive benefit of employees and their beneficiaries.

*Id.* at 1458 (citations omitted).

ESOP fiduciaries "wear two hats" as they "are expected to administer ESOP investments consistent with the provisions of both a specific employee benefits plan and ERISA." *Id*. (quoting *Moench v. Robertson,* 62 F.3d 553, 569 (3d Cir. 1995) (internal quotation marks omitted)). Put another way, an ESOP fiduciary must follow the plan documents but only insofar as such documents and instruments are consistent with the provisions of ERISA. *Id.* at 1457. In recognition of an ESOP fiduciary's "two hats," we have adopted an abuse-of-discretion standard of review for an ESOP fiduciary's decision to invest in employer securities. *Id*. at 1459. A fiduciary's decision to remain invested in employer securities is presumed to be reasonable, the so-called *Kuper* or *Moench* presumption. *Id.* A plaintiff may rebut the presumption "by showing that a prudent fiduciary acting under similar circumstances would have made a different investment decision." *Id.*; *accord Quan v. Computer Sciences Corp.*, 623 F.3d 870, 881–82 (9th Cir. 2010); *Kirschbaum v. Reliant Energy, Inc.*, 526 F.3d 243, 254-56 (5th Cir. 2008).

**C.  Whether the Kuper/Moench Presumption Applies at the Pleadings Stage**

While State Street is entitled to the *Kuper*/*Moench* presumption, we have not addressed whether the presumption applies at the motion to dismiss stage.  The Third Circuit in *Moench* announced the presumption of reasonableness when considering an evidentiary record on a motion for summary judgment.  In *Kuper*, this Court adopted the *Moench* presumption in reviewing the judgment of the district court, which was based on the parties' trial briefs, proposed findings of fact and conclusions of law, and the stipulated record of the case.  In this case the district court assumed the presumption would apply at the pleadings stage and held that the plaintiffs pleaded sufficient facts to rebut the presumption, particularly the allegations detailing General Motors' precarious financial situation during the class period and State Street's decision to continue holding GM stock as a plan asset.

We find no error in the district court's holding that, accepting the allegations of the complaint as true, the plaintiffs have pleaded facts to overcome the presumption. The plaintiffs have alleged that State Street failed to follow the terms of the plans themselves, which required State Street to divest the plans' holdings in company stock if "there is a serious question concerning [General Motors'] short-term viability as a going concern without resort to bankruptcy proceedings."  According to the complaint, on July 15, 2008, General Motors announced a restructuring plan designed to improve cash flow and save the company. By November 10, 2008, GM disclosed that its auditors had "substantial doubt" regarding the company's "ability to continue as a going concern." Nevertheless, State Street did not begin to divest the plan of its GM common stock holdings until March 31, 2009.  Based on these allegations, the plaintiffs have sufficiently pleaded that "a prudent fiduciary acting under similar circumstances would have made a different investment decision" and thereby overcome the presumption of reasonableness.

Because the plaintiffs have pleaded facts to overcome the presumption, we need not decide whether the *Kuper* presumption creates a heightened pleading standard in order to resolve this appeal.  However, both parties have addressed this issue in their

briefs and at oral argument. We also recognize that many district courts in this Circuit have confronted the issue and reached conflicting decisions. *E.g. In re Regions Morgan Keegan ERISA Litig.*, 741 F. Supp. 2d 844, 849 (W.D. Tenn. 2010) (noting that "[a]t least fourteen district courts in this Circuit have addressed this issue . . ." and have "overwhelmingly declined to apply the presumption of prudence" when considering a motion to dismiss); *Dudenhoeffer v. Fifth Third Bancorp*, 757 F. Supp 2d 753, 758-59 (S.D. Ohio 2010) (holding that the presumption applied at the pleadings stage in light of *Twombly* and *Iqbal*). Therefore, we take this opportunity to address whether a plaintiff must plead enough facts to overcome the *Kuper* presumption in order to survive a motion to dismiss.

Today, we hold that the presumption of reasonableness adopted in *Kuper* is not an additional pleading requirement and thus does not apply at the motion to dismiss stage. Our holding derives from the plain language of *Kuper* itself where we explained that an ESOP plaintiff could "rebut this presumption of reasonableness by *showing* that a prudent fiduciary acting under similar circumstances would have made a different investment decision." *Kuper*, 66 F.3d at 1459 (emphasis added). The presumption of reasonableness in *Kuper* was cast as an evidentiary presumption, and not a pleading requirement. *Cf. In re Citigroup ERISA Litig.*, 662 F.3d 128, 129 (2d Cir. 2011) ("The 'presumption' is not an evidentiary presumption; it is a standard of review applied to a decision made by an ERISA fiduciary."). We also highlight that in *Kuper* we applied the presumption to a fully developed evidentiary record, and not merely the pleadings. As such, a plaintiff need not plead enough facts to overcome the presumption in order to survive a motion to dismiss.[1] *Cf. Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) (holding that a plaintiff was not required to plead all of the prima facie elements

---

[1]We also note that many district courts in this Circuit have reached a similar conclusion. *See e.g. Sims v. First Horizon Nat'l Corp.*, No. 08-2293, 2009 WL 3241689, at *24 (W.D. Tenn. Sept. 30, 2009); *In re Diebold ERISA Litig.*, No. 06-cv-170, 2008 WL 2225712, at * 9 (N.D. Ohio May 28, 2008); *In re Goodyear Tire & Rubber Co. ERISA Litig.*, 438 F. Supp. 2d 783, 793 (N.D. Ohio 2006); *In re Ferro Corp. ERISA Litig.*, 422 F. Supp. 2d 850, 860 (N.D. Ohio 2006)*; In re CMS Energy ERISA Litig.,* 312 F. Supp. 2d 898, 914 (E.D. Mich. 2004); *Rankin v. Rots,* 278 F. Supp. 2d 853, 866 (E.D. Mich. 2003); *see also Tullis v. UMB Bank, N.A.*, 515 F.3d 673, 681 (6th Cir. 2008) (rejecting heightened pleading requirements in ERISA cases that "would elevate form over substance").

of the *McDonnell Douglas* evidentiary framework in order to survive a motion to dismiss).

Our holding is consistent with the standard of review for motions to dismiss generally. Courts are required to accept the well-pleaded factual allegations of a complaint as true and determine whether those allegations state a plausible claim for relief. *Napolitano*, 648 F.3d at 369. It follows that courts should not make factual determinations of their own or weigh evidence when considering a motion to dismiss. Precisely because the presumption of reasonableness is an evidentiary standard and concerns questions of fact, applying the presumption at the pleadings stage, and determining whether it was sufficiently rebutted, would be inconsistent with the Rule 12(b)(6) standard. Otherwise, courts would be forced to weigh the facts pleaded against their notion of the presumption and then determine whether the pleadings plausibly overcame the presumption of fiduciary reasonableness.

For example, State Street contends that the district court erred in concluding that the facts alleged in the complaint were sufficient to rebut the presumption. Specifically, State Street argues that there was a widely publicized expectation of government intervention on GM's behalf, and therefore, it was not unreasonable for the plans to continue to hold GM stock during the class period. State Street also asserts that holding GM stock continued to be reasonable until the White House "with all of its resources and expertise" determined on March 31, 2009, that GM's "viability as a going concern was in serious doubt." Appellee's Br. 42. State Street maintains that no amount of discovery will change these asserted facts. The possibility of federal intervention and its effect on the reasonableness of holding company stock, however, present questions of fact inappropriate for resolution on a motion to dismiss. State Street's argument about a possible bailout does nothing to establish that the numerous, detailed factual averments in the complaint fail to plausibly allege that General Motors was on the road to bankruptcy and thus had ceased to be a prudent investment for the plans. Short of converting the motion to dismiss into a motion for summary judgment, such an approach also invites courts to consider facts and evidence that have not been tested in formal

discovery.**2** Therefore, it would be improper for a court to weigh these factual assertions against the facts pleaded in the plaintiffs' complaint in order to determine whether the plaintiffs had overcome the presumption of reasonableness.

Finally, we recognize that sister circuits have reached the opposite conclusion and held that the *Kuper* presumption should be considered at the pleadings stage. State Street cites this authority in support of its assertion that the plaintiffs must plead facts to overcome the presumption in order to state a plausible claim. We find these decisions distinguishable because these circuits have adopted more narrowly-defined tests for rebutting the presumption than the test this Court announced in *Kuper*. For instance, the Third Circuit in *Edgar v. Avaya* affirmed the dismissal of a complaint, holding that the pleadings failed to allege facts demonstrating that the fiduciary abused its discretion by not divesting the plans of their holdings in company stock. 503 F.3d 340, 348-49 (3d Cir. 2007). Concerning the kinds of facts required to overcome the presumption of reasonableness, the Third Circuit explained that a plaintiff need not necessarily prove that a company is "on the brink of bankruptcy" but must demonstrate more than possible fraud or corporate wrongdoing in order to rebut the presumption. *Id.* at 349 n.13. The Third Circuit declined to find that corporate developments likely to have a negative effect on earnings, "or the corresponding drop in stock price [from \$10.69 to \$8.01], created the type of dire situation which would require defendants to disobey the terms of the Plans by not offering the Avaya Stock Fund as an investment option, or by divesting the Plans of Avaya securities." *Id.* at 348. The Third Circuit expressly rejected the plaintiff's contention that application of the presumption at the motion to dismiss stage was inconsistent with liberal notice-pleading standards. *Id.* at 349. The Third Circuit held that the allegations themselves affirmatively showed that the company was far from the sort of deteriorating financial circumstances that would permit the

**2**Of course, even on a motion to dismiss, courts retain the discretion to take judicial notice of certain adjudicative facts under Federal Rule of Evidence 201. *See* Fed. R. Evid. 201(c) & (f) ("Judicial notice may be taken at any stage of the proceeding."). Likewise, courts may consider written instruments incorporated into the pleadings by reference pursuant to Rule 10(c). Nothing in our holding limits the courts' discretion to employ these Rules to consider uncontested facts or exhibits at the pleadings stage. We simply conclude that applying the presumption of reasonableness to the pleadings is likely to force courts to weigh factual assertions and run afoul of the standard of review for motions to dismiss.

presumption to be rebutted, commenting that "'[m]ere stock fluctuations, even those that trend downward significantly, [were] insufficient to establish the requisite imprudence to rebut the *Moench* presumption.'" *Id.* (quoting *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1099 (9th Cir. 2004)) (alterations in original).

The Second Circuit recently reached a similar conclusion that courts should apply the presumption of reasonableness when analyzing the plausibility of the pleadings on a motion to dismiss. *In re Citigroup ERISA Litig.*, 662 F.3d at 140–41. The plaintiffs in *Citigroup* alleged that the bank had made "ill-advised investments in the subprime-mortgage market while hiding the extent of those investments from Plan participants and the public." *Id.* at 140. As a result of the investments, the company suffered $30 billion in losses, and Citigroup stock lost significant value. *Id.* The Second Circuit explained that in order to rebut the presumption of reasonableness, plaintiffs might not necessarily have to plead the company's "impending collapse" but must allege a "dire situation." *Id.* at 140–41. The Second Circuit affirmed the district court's dismissal of the prudence claim under Rule 12(b)(6), holding that "plaintiffs fail to allege facts sufficient to show that defendants either knew or should have known that Citigroup was in the sort of dire situation that required them to override Plan terms in order to limit participants' investments in Citigroup stock." *Id.* at 141. The Second Circuit stressed that even had the fiduciary investigated Citigroup's exposure to the sub-prime mortgage market, the company's losses and "the dire situation" in which it found itself during the class period were not foreseeable. *Id.*

We note that in addition to the Second and Third Circuits, the Fifth and Ninth Circuits have also adopted a rebuttal standard in cases involving the presumption of reasonableness, in which plaintiffs are required to come forward with some proof of "dire circumstances" or the "impending collapse" of the company. *Quan*, 623 F.3d at 882 (holding that a plaintiff must prove facts that "clearly implicate the company's viability as an ongoing concern or show a precipitous decline in the employer's stock combined with evidence that the company is on the brink of collapse or is undergoing serious mismanagement") (internal quotations marks, citations, and ellipsis omitted);

*Kirschbaum*, 526 F.3d at 255 (affirming summary judgment in fiduciary's favor in absence of evidence that company's "viability as a going concern was ever threatened" or that the company's stock "was in danger of becoming essentially worthless"). The Fifth and Ninth Circuits have also commented that the strength of the presumption depends on other factors such as the amount of discretion given to the fiduciary under the terms of the plan and any conflicts of interest the fiduciary may have. *Quan*, 623 F.3d at 883 ("A guiding principle, however, is that the burden to rebut the presumption varies directly with the strength of a plan's requirement that fiduciaries invest in employer stock.") (citing *Kirschbaum,* 526 F.3d at 255 & n. 9). Unlike the Second and Third Circuits, however, the Fifth and Ninth Circuits have not addressed whether a plaintiff must plead enough facts to rebut the presumption of reasonableness to survive a motion to dismiss.

In contrast to our sister circuits, we have not adopted a specific rebuttal standard that requires proof that the company faced a "dire situation," something short of "the brink of bankruptcy" or an "impending collapse." The rebuttal standard adopted in this Circuit, and the one which we are bound to follow, requires a plaintiff to prove that "a prudent fiduciary acting under similar circumstances would have made a different investment decision." *Kuper*, 66 F.3d at 1459. This formulation establishes an abuse of discretion standard, much like the one set out in the plan documents at issue here, and forces plaintiffs in cases of this type to carry a demanding burden. At the same time, this standard retains enough flexibility to address the unique circumstances that might give rise to a breach-of-duty claim against an ESOP fiduciary, whether the company is one with small capitalization or a corporation "too big to fail." We recognize that ESOP plaintiffs, having had an opportunity to conduct formal discovery, may come forward with rebuttal proofs of many kinds, depending on the facts of each case. Because *Kuper*'s standard for rebutting the presumption is not as narrowly defined to require proof of a "dire situation" or an "impending collapse," we find it inappropriate to apply it to the pleadings on a motion to dismiss, making the contrary decisions of other circuits distinguishable.

Even if we applied the *Kuper* standard to the pleadings in this case, we conclude that the plaintiffs have plausibly alleged that a prudent fiduciary acting under similar circumstances would have made a different investment decision with respect to GM stock.  In fact, we agree with the district court that the plaintiffs in this case have plausibly alleged that General Motors was on the brink of bankruptcy, under circumstances that would more than satisfy the "dire situation" standard of the Second, Third, Fifth and Ninth Circuits and arguably rise to the level of the "impending collapse" of the company.

In sum, we conclude that the better course is to permit the lower courts to consider the presumption in the context of a fuller evidentiary record rather than just the pleadings and their exhibits.  Therefore, we hold that while a complaint must plead facts to plausibly allege that a fiduciary has breached its duty to the plan, the pleadings need not overcome the presumption of reasonableness in order to survive a motion to dismiss.

**D.   Whether the Plaintiffs Adequately Pleaded that State Street Proximately Caused Their Losses**

The district court granted State Street's motion to dismiss based on its conclusion that the plaintiffs had failed to plausibly plead a causal connection between State Street's alleged breach of duty and losses to the plan.  The district court concluded that because plan participants could direct their investments by choosing from a menu of investment options and had the discretion to avoid GM stock altogether, State Street should not be held liable for the plaintiffs' decisions to stay invested in the General Motors Common Stock Fund.  In other words, "State Street cannot be held liable for actions which Plaintiffs controlled."  We disagree.

While it is true that the plaintiffs must eventually prove causation to prevail on their claims, *see Kuper*, 66 F.3d at 1459, the plaintiffs have plausibly pleaded causation to survive State Street's motion to dismiss.  In order to establish a causal connection between State Street's alleged breach of duty and losses to the plan, the plaintiffs need only show "a causal link between the [breach of duty] and the harm suffered by the plan," meaning "that an adequate investigation would have revealed to a reasonable

fiduciary that the investment [in GM stock] was improvident." *Id.* at 1459-60 (internal quotations and citations omitted).  The plaintiffs allege that State Street allowed the plans to continue to hold GM stock well after it became imprudent to do so and thereby breached its duty to the plan.  *See* Compl. ¶¶ 7-10, 71-72.  According to the pleadings, GM stock ceased to be a prudent investment on July 15, 2008, the date on which GM announced its restructuring plan in response to its "significant" second quarter losses.  State Street did not make the decision to divest the plans of their GM stock holdings until March 31, 2009.  The plaintiffs allege that the plan suffered hundreds of millions of dollars in losses as a result of State Street's delay.[3]  Based on these allegations, the complaint has sufficiently pleaded a causal link between State Street's breach and losses to the plans.

The district court erroneously relied on the fact that the plaintiffs had the ability to divest their 401(k) accounts of the GM stock on any given business day and held that State Street's alleged breach did not cause the losses to the plan.  We hold that as a fiduciary, State Street was obligated to exercise prudence when designating and monitoring the menu of different investment options that would be offered to plan participants. *See Howell v. Motorola, Inc.*, 633 F.3d 552, 567 (7th Cir.), *cert. denied sub nom. Lingis v. Dorazil*, 132 S. Ct. 96 (2011); *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 418 n.3 (4th Cir. 2007); *Langbecker v. Elec. Data. Sys. Corp.*, 476 F.3d 299, 312 (5th Cir. 2007).  As the Seventh Circuit explained, "[t]he choice of which investments will be presented in the menu that the plan sponsor adopts is not within the participant's power.  It is instead a core decision relating to the administration of the plan and the benefits that will be offered to participants." *Howell*, 633 F.3d at 567.  Therefore, "[i]t is . . . the fiduciary's responsibility . . . to screen investment alternatives and to ensure that imprudent options are not offered to plan participants." *Id.*; *see also Hecker v. Deere & Co.*, 569 F.3d 708, 711 (7th Cir. 2009) (rejecting the notion that a fiduciary

_____

[3]The plaintiffs need not ultimately prove that July 15, 2008 was the actual date on which it was no longer reasonable to continue holding GM stock, only that the "imprudent date" for GM stock occurred prior to March 31, 2009.   The plaintiffs have alleged, for example, that in November 2008 GM's own auditors reported "substantial doubt" about the company's "ability to continue as a going concern." Regardless of whether the actual "imprudent date" was in July 2008 or November 2008, the date is more relevant to the amount of losses to the plan, and not the issue of causation.

"can insulate itself from liability by the simple expedient of including a very large number of investment alternatives in its portfolio and then shifting to the participants the responsibility for choosing among them"); *accord Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 596 (8th Cir. 2009) (holding that allegations that better investment options existed were sufficient to state a claim for breach of fiduciary duty).

Here State Street had a fiduciary duty to select and maintain only prudent investment options in the plans. Indeed, State Street's engagement letter with GM vested State Street with the "exclusive authority under each Plan and Trust to determine whether the Company Stock Fund continue[d] to be a prudent investment option under [ERISA]." Despite State Street's fiduciary duty to protect plan assets, the district court focused on the fact that plan participants had the power to reallocate their funds among a variety of options, only one of which was the General Motors Common Stock Fund. A fiduciary cannot avoid liability for offering imprudent investments merely by including them alongside a larger menu of prudent investment options. Much as one bad apple spoils the bunch, the fiduciary's designation of a single imprudent investment offered as part of an otherwise prudent menu of investment choices amounts to a breach of fiduciary duty, both the duty to act as a prudent person would in a similar situation with single-minded devotion to the plan participants and beneficiaries, as well as the duty to act for the exclusive purpose of providing benefits to plan participants and beneficiaries. *Gregg*, 343 F.3d at 840. Therefore, we reject the district court's approach because it would insulate the fiduciary from liability for selecting and monitoring the menu of plan offerings so long as some of the investment options were prudent.

State Street also cannot escape its duty simply by asserting at the pleadings stage that the plaintiffs themselves caused the losses to the plans by choosing to invest in the General Motors Common Stock Fund. Such a rule would improperly shift the duty of prudence to monitor the menu of plan investments to plan participants. The Seventh Circuit opined that such a standard "would place an unreasonable burden on unsophisticated plan participants who do not have the resources to pre-screen investment alternatives." *Hecker*, 569 F.3d at 711. While some plan participants undoubtedly

possess greater sophistication than others in these matters, the fact remains ERISA charges fiduciaries like State Street with "the highest duty known to the law," *Kuper*, 66 F.3d at 1458, which includes the duty to prudently select investment options and the duty to act in the best interests of the plans. For this reason, we reject State Street's argument that plan participants, who enjoyed access to all of the same publicly-available information about GM's woes during the class period as State Street, caused the plan losses. Aside from being an untested assertion of fact, we disagree that plaintiff-participants should be held to the same standard of care as an ERISA fiduciary, particularly in a matter that pertains to plan administration. If the rule were otherwise, a fiduciary administering any 401(k) where participants direct their own investments could always argue that the participant's decision to hold the imprudent investment was an intervening cause and avoid any liability. Therefore, we conclude that the plaintiffs have pleaded enough facts to make plausible their claim of a causal link between State Street's conduct and the losses to the plan.

**E. Whether Section 404(c) of ERISA Shields State Street from Liability**

In ruling that the plaintiffs failed to adequately plead causation, the district court relied in part on the safe harbor provision found in ERISA § 404(c). Specifically, it stated that "Section 404(c) provides that a trustee of a plan is not liable for any loss caused by any breach which results from the participant's exercise of control over those assets." We hold that section 404(c) is not applicable at this stage of the case. Section 404(c) is an affirmative defense that is not appropriate for consideration on a motion to dismiss when, as here, the plaintiffs did not raise it in the complaint.

Section 404(c) contains an exception to the fiduciary duties otherwise imposed on plan administrators when the plans delegate control over assets directly to plan participants or beneficiaries. The relevant portion of the statute, 29 U.S.C. § 1104(c), states

(c) Control over assets by participant or beneficiary

(1)(A) In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account *(as determined under regulations of the Secretary)* –

(i) such participant or beneficiary shall not be deemed to be a fiduciary by reason of such exercise, and

(ii) no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control, except that this clause shall not apply in connection with such participant or beneficiary for any blackout period during which the ability of such participant or beneficiary to direct the investment of the assets in his or her account is suspended by a plan sponsor or fiduciary.

9 U.S.C. § 1104(c) (emphasis added).

The following example illustrates the policy rationale for the section 404(c) safe harbor defense. "If an individual account is self-directed, then it would make no sense to blame the fiduciary for the participant's decision to invest 40% of her assets in Fund A and 60% in Fund B, rather than splitting assets somehow among four different funds, emphasizing A rather than B, or taking any other decision." *Howell*, 633 F.3d at 567. The safe harbor then "ensures that the fiduciary will not be held responsible for decisions over which it had no control." *Id.* (citing *Mertens v. Hewitt Assocs.,* 508 U.S. 248, 262 (1993)).

Nevertheless, the fact that a plan participant or beneficiary exercises control over plan assets does not automatically trigger the section 404(c) safe harbor. The statute specifies that participant control is determined under the Department of Labor ("DOL") regulations. 29 U.S.C. § 1104(c)(1)(A). The DOL has promulgated detailed regulations about the section 404(c) defense, defining the circumstances under which a plan qualifies as a section 404(c) plan. The regulations include over twenty-five requirements that must be met before a fiduciary may invoke the section 404(c) defense. *See* 29 C.F.R. § 2550.404c-1. One such requirement is that participants be provided with "an

explanation that the plan is intended to constitute a plan described in section 404(c) and [the regulations]." *Id.* The regulation is consistent with the legislative history of ERISA, which suggests that Congress was reluctant to extend the section 404(c) safe harbor to include stock funds. H.R. Conf. Rep. No. 93-1280, at 305, *reprinted* in 1974 U.S.C.C.A.N. 5038, 5086. The regulations, accordingly, include particularly stringent protections with respect to stock funds.

While we have not previously addressed the issue, we join other circuits in recognizing that section 404(c) is an affirmative defense to a claim for breach of fiduciary duty under ERISA, on which the party asserting the defense bears the burden of proof. *Hecker*, 556 F.3d at 588; *Allison v. Bank One Denver*, 289 F.3d 1223, 1238 (10th Cir. 2002); *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 446 (3d Cir. 1996); *see Langbecker*, 476 F.3d at 309 (referring to § 404(c) as a "defense"). Courts generally cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings.[4] *Hecker*, 556 F.3d at 588. Here, the complaint says nothing of the detailed requirements that a party must establish in order to rely on the defense. For its part, State Street did not assert or prove that it had complied with the requirements of the regulation to qualify for the safe harbor. The district court had no basis for assuming that the plans at issue here met the regulatory requirements for the section 404(c) defense. Therefore, we hold that the district court erred in relying on the section 404(c) safe harbor defense at this stage of the proceedings.

Moreover, even if the plans satisfied the regulations to qualify as section 404(c) plans, we hold that the safe harbor defense does not apply under the circumstances because it does not relieve fiduciaries of the responsibility to screen investments. The Seventh Circuit recently held that "the selection of plan investment options and the decision to continue offering a particular investment vehicle are acts to which fiduciary duties attach, and that the [section 404(c)] safe harbor is not available for such acts."

---

[4]This fact is no less true even if the result is only "to delay the inevitable." Appellee's Br. 36 n.6.

*Howell*, 633 F.3d at 567; *DiFelice*, 497 F.3d at 418 n.3 (holding that "although section 404(c) does limit a fiduciary's liability for losses that occur when participants make poor choices from a satisfactory menu of options, it does not insulate a fiduciary from liability for assembling an imprudent menu in the first instance").

We find the Seventh Circuit's reasoning persuasive. If the purpose of the safe harbor is to relieve a fiduciary of responsibility "for decisions over which it had no control," *Howell*, 633 F.3d at 567, then it follows that the safe harbor should not shield the fiduciary for a decision which it *did* control, such as the selection of plan investment options. *See also* 29 C.F.R. § 2550.404c-1(d)(2)(i) ("[I]f a plan participant or beneficiary of an ERISA section 404(c) plan exercises independent control over assets in his individual account in the manner described in [the regulation]," then the fiduciaries may not be held liable for any loss or fiduciary breach "that is the *direct and necessary result* of that participant's or beneficiary's exercise of control." (emphasis added)).

This holding is also consistent both with the position taken by the Secretary of Labor in her amicus curiae brief in this appeal and with the preamble to the regulations implementing the safe harbor. *See* Final Regulation Regarding Participant Directed Individual Account Plans (ERISA Section 404() Plans), 57 Fed. Reg. 46,906, 46,924 n.27 (Oct. 13, 1992) (explaining that "the act of designating investment alternatives . . . in an ERISA section 404(c) plan is a fiduciary function to which the limitation on liability provided by section 404(c) is not applicable"). We add that the Department of Labor began a notice and comment rule-making proceeding in 2010 to revise its regulations and "reiterate [the Department's] long held position that relief afforded by section 404(c) and the regulation thereunder does not extend to a fiduciary's duty to prudently select and monitor . . . designated investment alternatives under the plan." Fiduciary Requirements for Disclosure in Participant-Directed Individual Account Plans, 73 Fed. Reg. 43,014, 43,018 (proposed July 23, 2008). The amended text of the 404(c) regulation also provides that the safe harbor provision "does not serve to relieve a fiduciary from its duty to prudently select and monitor any service provider or

designated investment alternative offered under the plan." Fiduciary Requirements for Disclosure in Participant-Directed Individual Account Plans, 75 Fed. Reg. 64,910, 64,946 (Oct. 20, 2010) (to be codified at 29 C.F.R. § 2550.404c-1(d)(2)(iv)). Although the proposed amendment to the regulation is not binding or even owed any deference in this case, it does provide additional, relevant support for the result we reach.

We recognize that the Fifth Circuit took a contrary view in a split opinion considering a class certification motion and held that a fiduciary may be able to rely on the safe harbor defense when presented with claims that it improperly selected and monitored plan investment choices. *Langbecker*, 476 F.3d at 309. The court explained that

> a plan fiduciary may have violated the duties of selection and monitoring of a plan investment, but § 404(c) recognizes that participants are not helpless victims of every error. Participants have access to information about the Plan's investments, pursuant to DOL regulations, and they are furnished with risk-diversified investment options. In some situations, as happened here, many of the Participants will react to the company's bad news by buying more of its stock. Other Participants will . . . trade their way to profit no matter the calamity that befell the stock. Section 404(c) contemplates an individual, transactional defense in these situations, which is another way of saying that in participant-directed plans, the plan sponsor cannot be a guarantor of outcomes for participants.

*Id.* For the reasons state above, we disagree with this approach. But even were we were to adopt it, State Street would only be able to raise the section 404(c) defense on an individual basis at some later stage of the case, such as at the class certification stage, but not on a motion to dismiss. However, we hold that section 404(c) does not provide a defense to the selection of the menu of investment options that the plan will offer.

**F. Whether the Plaintiffs are Collaterally Estopped**

State Street argues that the plaintiffs are collaterally estopped from bringing this action because the issues raised are "virtually identical" to issues decided by the Second Circuit in *Young v. General Motors Investment Management Corp.*, 325 F. App'x 31 (2d Cir. 2009). In order to establish preclusion, State Street must show

(1) the precise issue raised in the present case must have been raised and actually litigated in the prior proceeding; (2) determination of the issue must have been necessary to the outcome of the prior proceeding; (3) the prior proceeding must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding.

*Kosinski v. Comm'r*, 541 F.3d 671, 675 (6th Cir. 2008) (citation omitted)

State Street has failed to establish the first element, that the precise issue raised in this case was raised and actually litigated in a prior proceeding. The district court in *Young* issued its decision on March 24, 2008. The plaintiffs in the case at bar allege that State Street breached its duty at the earliest on July 15, 2008, several months after the district court in *Young* granted summary judgment in favor of State Street and another fiduciary on claims arising well before the ones at issue here. Therefore, putting aside all the other requirements that must be established to invoke collateral estoppel, *Young* could not have resolved the fiduciary breaches alleged to have occurred during the class period in this case. Therefore, we hold that the plaintiffs are not collaterally estopped from bringing this action.

For the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings.